Good morning, Your Honors. My name is Okori Okorocha for the Plaintiff, Carter, and Appellant. This case, there were cross motions for summary judgment. The district court granted summary judgments on behalf of the county using the STIGMA Plus standard. I have not found a case in anywhere that an employment termination of a police officer applies the STIGMA Plus standard. Every single case dealt with defamation that uses the STIGMA Plus standard. The standard that does apply is when a police officer is terminated, regardless of if he's on probation or not, for misconduct. In this case, for Carter, he was put on leave the very next day after an off-duty shooting and then terminated. He has a liberty interest hearing that he's entitled to prior to being terminated. In this case, there were many requests for such a hearing. He never obtained such a hearing and was simply terminated immediately thereafter. The numerous cases we cited, Luby, Riveros, all the cases make this perfectly clear. The reason and the reasoning behind this rule is that if an officer is terminated for misconduct, he can no longer be a police officer, as is the case with Mr. Carter. This has been four years. He's had trouble getting a job, period. Certainly not able to get a job as a police officer. Is there evidence in the record that he's made applications to specific departments and been rejected? Absolutely. He applied to just about every sort of law enforcement job that he could possibly get. Is there evidence of that in the record? And if so, where can we find it? I am confident there is. I don't have the record in front of me because it was voluminous. It was, however, I believe a part of the motion, and I remember turning it over. I believe Carter, for purposes of his case, has to make the allegation that that is in fact the case, which he has repeatedly. No case has held that an officer can be fired for misconduct without this hearing prior to termination in order to clear his name. I just have a note, so I'm not sure if it's right, but I thought at record 310, he was asked in his deposition whether he, quote, made any efforts to secure employment in the law enforcement capacity, close quote, and he said no. I don't. I'll look back and check it. I'm sure we all will, but that's the note I have. I don't believe that's right. But assuming it is, Mr. Carter still has the right to the name-clearing hearing because every police agency, as the cases state, will run a background check, ask why you were terminated, why you aren't there anymore, and it will say bad shooting. No one is going to hire an officer for a bad shooting, despite the fact that it wasn't a bad shooting. Well, I actually thought that was going to be your argument, that the stigma plus issue, the idea of evidence of consequences is not required in the termination of a police officer for a shooting because any police department looking at him would automatically think that he's not qualified for the job and wouldn't take a chance on him, and that in and of itself is in the nature of a stigma plus.  But now you've told us that you think he actually fleshed that out by applying for jobs and getting refused. Well, I would go with Your Honor's argument. I used to be a good lawyer. He didn't need to show any damages. He just needed to show that he didn't get the rights, he didn't get the hearing, he didn't get to clear his name, and that is required because police officers can't practice their chosen profession in the event that they're terminated for misconduct. I also thought there were some levels of administrative hearing. I mean, he might have been fired first, but then he had some post-terminations hearing. Wasn't there some administrative mechanism before it became absolutely final? No, Your Honor. They did go to Chief Burns' office, he and his attorney, to talk with Chief Burns. There was no notice of hearing, no notice of charges. They just went there, and Chief Burns says no matter how he tries to spin it, he's gone. And that was the extent of it. He didn't get to present any evidence. There was no arbiter. Chief Burns just reviewed the videotape. I guess what I'm thinking of is the appeal of his discharge to the Civil Service Commission. He did that, right? Yes, Your Honor. He did file written appeals. Those were just denied. There was no opportunity to present evidence in a hearing setting. He simply was able to file requests and file documents asking for a hearing, but he never did get a hearing. Okay. I'll reserve. Thank you. You may. And we'll hear from the county. Good morning. Julie Fenney on behalf of County of Los Angeles et al. The plaintiff has failed to show that his liberal interests were violated because of the nature of his discharge. He was discharged because he demonstrated a lack of good judgment and common sense in the off-duty shooting. A lack of good judgment is not a crime of moral turpitude. If you look at the cases that plaintiffs cited, Doyle, Riveros, Burden, excuse me, they show the type of conduct that involved moral turpitude. For example, in Riveros, the plaintiff's discharge was based on an allegation that he had sexual intercourse with a woman he had arrested. That's not the nature of the charges here. It's lack of judgment and lack of common sense. Well, why isn't that a sufficient plus? Why isn't that a stigma? Well, it's not saying he's immoral. It's not saying he's dishonest. It's not saying he committed fraud. It's saying he's not confident in his duties. And lack of confidence does not trigger that stigma. It doesn't? If you're a ---- If it's threatened, the Stretton case, the lack of confidence there does not trigger the liberty interest. As a general matter, that may well be right. Was that a police case? Because it seems to me when a police officer is fired in a shooting for lack of confidence, lack of judgment in discharging his firearm, that seems to make it pretty unlikely that another police department is going to hire him. But if that affects his future ability to obtain employment, that does not implicate the liberty interest. The Ninth Circuit in Roth said that the liberty interest should be drawn on the nature of the charge and not the actual consequence of the charge. So if it ---- this does not go beyond confidence. Yes, it involved a weapon, but that was his job, to be confident in deciding when to use a weapon or not. It doesn't involve dishonesty, fraud, sexual allegations. For instance, in Merton made the distinction. The charges on the deputy sheriff's competency and ability to get along with co-workers did not infringe liberty interest. But his conversations about his sexual activities did infringe his freedom. So those are the distinctions. It goes beyond the job, beyond whether he's confident, beyond whether he views good judgment. It goes to his morality. And all the cases show the distinction. Let me ask if you can clarify one administrative point for me. I know he asked for a liberty interest hearing, and he didn't get it. Yes. And then he filed an amended petition for it, and that was denied. And I'm just wondering, is it your position that the denial was itself a hearing or was it in fact a refusal to have a hearing? Not a refusal. He is not entitled to a hearing unless his liberty interest was infringed. And they found that based on the nature of his discharge, lack of a common sense, he was not entitled to a hearing. Nothing in the civil service rules entitles him to that hearing as a probationary employee unless his liberty interests were infringed. And because he was terminated for incompetency, he was not entitled to a hearing. I go back to the Supreme Court's decision in Roth, which sets up the liberty interest. And it makes a point about, indeed, it says that there wasn't a suggestion in that case that he would suffer, quote, a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities, close quote. It seems to me that the line being drawn by Roth speaks to the potential problem that we have here, which is that Plaintiff is arguing whatever the nature of this disability is, it should be free from other employment opportunities. Why shouldn't that be the key or the measure? Why should we care whether the stigma is because of immorality or incompetence? Well, if you go by what the consequences are, then it doesn't matter what the reason for the termination was. And then anyone who suffers ill consequences because he's getting fired would be entitled to a hearing. It can't work that way. Why not? Well, we would never be out of court. You have to make a distinction between what actually is a charge of morality or dishonesty and what is just simply not competence on the job. If everyone who were incompetent, whether it's the use of a gun or any other or a surgeon in the hospital, were entitled to the hearing, the courts would be clogged. It has to go beyond the conscience of the judge where your entire character is being affected, and that way no one would hire you because you're an immoral or dishonest person. Well, Roth doesn't appear to draw the line in that place. So what authority supersedes or replaces Roth? I think Stratton makes the distinction. Roth v. Better Administration, he couldn't get along with others, so that affected his ability to work in his profession. And in Stratton, Stratton involved the employee from practicing medicine. That's certainly a serious charge, but he couldn't get along with his patients. Suppose other people heard he couldn't get along and they didn't want to hire him as a doctor. I haven't seen one case cited by a plaintiff where a police officer who was charged for incompetence was then granted a liberty hearing. I'm looking at your brief citing Roth v. Better Administration or Stratton, and you've got helpful parentheticals describing the cases, and both of them seem to highlight it doesn't, would not prevent the employee from practicing medicine, would not foreclose the employee's ability to practice his profession. The claim of plaintiff here is that it does foreclose the ability to become a law enforcement officer. Well, then the question becomes, do you want a law enforcement officer who's shooting someone in an off-duty incident where it wasn't called for? But that's exactly the concern. Because he wants an opportunity to offer his side of that case, and he wasn't given it. The question here is whether it's a liberty interest. And you're trying to get to the merits. And frankly, I thoroughly agree. If, in fact, the allegations proved out, I wouldn't want a person that shoots down the street like they do in TV shows to be a police officer. But he's trying to claim that there's another side of the story. And so what he's seeking is a hearing to give that side of the story. And he hasn't had it. I believe the cases are clear that it goes be – it has to go beyond incompetence on the job. And I haven't seen one case cited by him in his situation where a police officer didn't do his job. Can you give me a case that says even if the plaintiff's future employment prospects are seriously impaired or are foreclosed as a result, if it's based on incompetence rather than immorality, there's no liberty interest involved? Well, I'll quote you Stratton, 537F2nd. Well, I just read your own parenthetical about that. But it said a liberty interest under Ross should be drawn on the basis of the nature of the charge used as a grounds for termination and not the actual consequences of the charge. Here the nature of the charge was incompetence. It wasn't morality. It wasn't dishonesty. And that determines whether a liberty interest is implicated. Let me ask you if this pans out. Some of the cases, say you get a liberty interest hearing when the reason you can't practice your profession is because you have had your license revoked. That's clearly the revocation of something that a doctor can't practice without a license. So you get that kind of hearing. Is the distinction that if, as a practical matter, you can't get a job in your chosen profession, but you've been fired for incompetence, then that doesn't matter because incompetence is not reviewable unless there is some kind of adjudication that restricts your legal ability to seek that job? And he is not restricted. Right. And so, therefore, it's not fair to say the whole universe of any police force would never hire him. I don't think a showing's been made. Okay. If you have no more questions, thank you. Thank you. Can I ask you, isn't the extension of the rule you're seeking, it means that any time there is a for-cause termination of a public employee, for-cause, because if it's for-cause, it means that a subsequent employer is not going to look at that employee very well. Every time that happens, there's a right to a liberty hearing? A liberty interest hearing? Well, the court states that if the person is fired as a police officer for misconduct, then he's entitled to a name-clearing hearing no matter how they couch it. Incompetence, he has no common sense for whatever they want to call it. This is for a shooting at a vehicle, an off-duty shooting. To couch that in any other way other than misconduct wouldn't make any sense. How can an off-duty shooting for which you were fired not be considered misconduct for somebody having no common sense? I mean, these are serious allegations that would impede him in getting another police job. It's also, you know, at the pleading stage or for purposes of getting to trial, he doesn't have to prove that no police agency anywhere in the free world would ever hire him. He just has to show, well, he just has to allege that it creates a great difficulty in him getting another job. And he did have a deposition in which he indicated that he applied and he was unable to get other jobs. As opposed to the cases cited by the respondents, those physicians were able to get other residencies immediately. One of them was a pathologist. He got a residency in Boston. It doesn't make it impossible because a person's license is not revoked. Well, but now we may come back to the problem that Judge Kogan had pointed out some time ago, which is that in the record is your client's testimony that he had not sought other employment. And he explained it by saying he, at that point in time, hadn't been able to come to grips with the loss of this job. So do we have anything in the record that supports the proposition that his employment prospects have, in fact, been impaired? If I recall correctly, I believe Justice Kogan indicated that my argument should be that he doesn't need to establish that. Well, but I threw you that lifeline and you grabbed it. Sure. But then you've got the problem. If your case is now being based on the stigma requirement for a liberty interest dissatisfied by being unable to secure other employment in his chosen field, at that point, wouldn't you need some kind of evidence to support the proposition that he, in fact, has suffered such an impairment? And is there any evidence of that in the record? I, it'd be, the record's three volumes, so it would be very difficult for me to recall that. But I specifically remember that he did put out those efforts. Well, the piece that I know of, I happen to have it here, and I went and Judge Kogan read it accurately, says that he, at least at that point in time, had not made any efforts. Now, there may have been, there may be something in the record for subsequent efforts, but the record I have is the record I have. Okay. But I would also like to state that this would be a permanent impediment to getting a police job. That's your statement. That's argument. Is there anything in the record to support that proposition? And that's really the question I'm trying to pose. If the argument now is based on inability to find other employment in the chosen field, okay, where do we find support for the proposition? If there is no support, then that may be summary judgment. I would agree with Your Honor. If that is the standard, that was not my reading of the cases. Luby. Okay. Well, if you're not arguing immorality and dishonesty, and this is just an assumption now, because maybe there's something else in the record, but I haven't found it, you're not arguing or you're not offering any evidence to support the proposition of diminished employment opportunities or eliminated employment opportunities, what else is there for the liberty interest? I mean, the lifeline was number two, but if there is no evidence to support number two, what else is there? Well, Your Honor, I don't believe any of the cases say it has to involve immorality, moral turpitude. I did not see that anywhere, and I don't believe any case indicated that. Further, in uncalled for discharge of a weapon, firing off a gun would be the biggest morally unacceptable conduct you could imagine from a police officer. I mean, just right with reckless disregard, almost killing people. I mean, to say that's moral, it just doesn't, it may not fit into what we legally see as moral turpitude in terms of professional conduct. However, firing off a weapon when it's not called for, certainly not something we could deem conducive to police behavior. Thank you. Thank you. We thank both counsel for your argument. The case just argued is submitted.
judges: Cogan, Schroeder, Clifton